Filed 1/6/16  In re Manuel M. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re MANUEL M. et al., Persons Coming Under the Juvenile Court Law. | B261240<br>(Los Angeles County<br>Super. Ct. No. CK98678) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>BRENDA R.,<br><br>      Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Teresa Sullivan, Judge.  Affirmed in part as modified and reversed in part.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, Stephen D. Watson, Deputy County Counsel, for Plaintiff and Appellant.

_____

In this dependency case (Welf. & Inst. Code, § 300 et seq.),[1] Brenda R. (Mother) challenges the portion of the disposition order requiring her to submit to on demand, consecutive drug tests if the Los Angeles County Department of Children and Family Services (DCFS) suspects she is using drugs. Mother contends the juvenile court erred in making this order because (1) there was insufficient evidence supporting an order for drug testing, and (2) the court improperly delegated its authority to demand Mother drug test to DCFS.

## BACKGROUND

### Prior Dependency Case

In May 2013, in a prior dependency case, the juvenile court declared Mother's children, Manuel M., Jr., (then five years old), Noah M. (then three years old), Angel M. (then two years old), and D.R. (then eight months old), dependents of the court after sustaining allegations under section 300, subdivision (b). The court found Mother and Manuel M., Sr., the father of Mother's three older children, had "a history of engaging in physical confrontations in the children's presence," including an incident during which Manuel M., Sr., pulled Mother's hair and threw a cell phone at her face, and Mother failed to protect the children from such confrontations (count b-2). The court further found Manuel M., Sr., had a history of alcohol abuse, and Mother "failed to protect the children in that [Manuel M., Sr.,] was under the influence in the children's presence (count b-4). During the pendency of this prior dependency case, Mother informed a social worker she believed Manuel M., Sr., might "be abusing drugs in addition to alcohol." In January 2014, after Mother completed a domestic violence program and individual counseling to address parenting and child protection, the court awarded her sole legal and physical custody of the four children, and thereafter terminated dependency jurisdiction.

---

[1] Further statutory references are to the Welfare and Institutions Code.

**First Domestic Violence Referral in the Present Case**

On June 23, 2014, about five months after the prior case was terminated, DCFS received a referral alleging Mother and D.R.'s father, Angel M. (Father),[2] engaged in a domestic violence incident in the children's presence. On June 26, 2014, a social worker interviewed Mother. Mother stated Father did not live in the home she shared with her four children, but he was "in and out" of the home. According to Mother, on the morning of June 22, 2014, she and Father "were arguing over a cell phone call" after Father "'woke up on the wrong side of the bed.'" Initially, Mother told the social worker the children were not home during the argument, but then stated the children were in the living room while she and Father argued outside. Mother told Father to leave, and when he refused she called the police. After she made the call, Father shoved her to move her out of the way as he walked down the ramp by the back door. Mother "heard from someone" that Father went to Mexico sometime after this incident. Mother denied the allegation in the referral that Father punched her.

Mother further denied she and Manuel M., Sr., had a history of domestic violence (notwithstanding the juvenile court's finding in the prior dependency case). Regarding the cell phone incident referenced in the court's finding (count b-2) in the prior case, Mother told the social worker Manuel M., Sr., "threw the phone and she [Mother] actually thought she was getting away from it but moved into it and it hit her." According to Mother, Manuel M., Sr., was currently incarcerated (at the time of the June 26, 2014 interview).

Mother also told the social worker she did not use alcohol or drugs, had no mental health issues, and did not have a criminal history. At the conclusion of the interview, Mother agreed to a safety plan requiring that Father stay out of the home and have no contact with her or the children.

_____

[2] We hereafter refer to D.R.'s father as "Father" to avoid confusion with Mother and Manuel M., Sr.'s son, Angel M.

On July 23, 2014, DCFS received the police report from the June 22, 2014 incident between Mother and Father. According to the police report, Mother informed an officer she and Father had been dating for two years and were living together for three months. Mother reported, on June 22, 2014, she and Father argued after he asked to borrow her car and she refused his request. According to Mother, Father punched her in the ribs with his fist and spit on her face. He threw a metal paint tray at her, but she closed the front door and avoided it. Mother stated alcohol was not a factor in the incident. She disclosed a history of arguments with Father during which he threw things at her and spit on her. Father was not present when officers arrived. The children were present and either did not see the incident or were unable to describe it. The officers left, but responded back to Mother's home shortly thereafter because Mother called to report Father had returned. Mother told officers Father punched her mouth with his fist and she fell backward over a sprinkler. She also stated Father took the car keys out of her hand and drove away. The officers did not observe any physical injuries on Mother.

DCFS obtained Father's criminal history and discovered multiple convictions. Three of Father's cases between 2002 and 2005 involved charges of possession of a controlled substance.

**Second Domestic Violence Referral in the Present Case**

On July 29, 2014, DCFS received a referral alleging Father was arrested on July 26, 2014, after he threw a cell phone which hit Mother in the head causing injury. In investigating the referral, the social worker spoke to a police detective on July 30, 2014 who stated, although Mother dialed 911 on July 26, 2014 to report the incident, when the detective called Mother to follow up Mother claimed not to remember anything about the incident. The detective also informed the social worker that law enforcement responded to Mother's home on at least five occasions between May and July 2014 regarding domestic violence between Mother and Father. According to the detective, a court issued a restraining order against Father on July 1, 2014. When officers responded to a domestic violence call from Mother's home on July 10, 2014, they did not arrest Father for a restraining order violation because they were unaware of the restraining order.

4

On July 30, 2014, the social worker interviewed Mother regarding the July 26, 2014 domestic violence incident with Father. Mother stated Father came to her home that night to give her money and to pick up clothes to take back to Mexico. Mother denied Father came near her, but stated "she got hit with an object from [a] distance." Mother could not recall what the object was that hit her. Mother told the social worker the children were at the maternal grandmother's home when this incident occurred. The social worker explained to Mother that she was violating the safety plan and the restraining order by allowing Father into her home. Mother stated she was unaware of the restraining order until the day before when a detective contacted her about the July 26, 2014 domestic violence incident and informed her about the restraining order. The social worker explained that DCFS planned to seek a warrant from the juvenile court for removal of the children from Mother and their fathers.

On August 8, 2014, the juvenile court issued an order authorizing the removal of the children from Mother and their fathers. The following day, the social worker served the removal warrant on Mother and Mother cooperated with DCFS's detention of the children. DCFS placed the children in foster care.

**Dependency Proceedings in Present Case**

On August 13, 2014, DCFS filed a dependency petition under section 300, subdivisions (a) and (b), alleging Mother's history of domestic violence with Father and failure to protect the children from same (counts a-1 & b-1). The petition also re-alleged the allegations from the prior dependency case regarding Mother's history of domestic violence with Manuel M., Sr., (count b-2) and Manuel M., Sr.'s history of alcohol abuse (count b-3). On August 14, 2014, the juvenile court ordered the children detained in foster care. The court also ordered reunification services and monitored visitation for Mother.

The social worker interviewed the three older children and Mother for DCFS's October 9, 2014 jurisdiction/disposition report. The social worker was unable to interview Father and Manuel M., Sr., before preparation of the report as both fathers were incarcerated.

5

All three boys told the social worker they had witnessed domestic violence between Mother and Father, and two of the boys (Noah and Angel) told her they had witnessed domestic violence between Mother and Manuel M., Sr. One of the boys, Manuel M., Jr., told the social worker that Manuel M. Sr., drank "lots" of alcohol. The other two boys stated they were unaware of any alcohol abuse.

Mother told the social worker the allegations in the petition regarding domestic violence between her and Angel (counts a-1 & b-1) and her and Manuel M., Sr., (count b-2) are true. Concerning the allegation about Manuel M., Sr.'s alcohol abuse, Mother described him as a "social drinker" and stated "she did not believe that he had any addiction problem." Mother added that she believed Father "might be a drug addict," although she did "not really know much about drugs so she was not . . . sure."

DCFS recommended in the jurisdiction/disposition report that the juvenile court declare the children dependents of the court and remove them from their parents. DCFS further recommended the court order all parents to participate in domestic violence and parenting programs as well as random alcohol and drug testing. DCFS expressed concern in the report "about alcohol abuse and the role it played in the violence that occurred in the home."

At the December 18, 2014 adjudication/disposition hearing, after admitting documents into evidence and hearing oral argument, the juvenile court sustained count b-1 as amended as follows: "The children Manuel M[.], Noah M[.], Angel M[.] and [D.R.]'s mother Brenda R[.] and child [D.R.]'s father Angel M[.] [Father] have a history of engaging in violent physical altercations in the presence of the children. On 6/22/14, [Father] struck the mother in the face and mouth with the father's fists, causing the mother to stumble and fall backwards against a sprinkler. On 6/22/14, [Father] struck the mother's right rib cage with the father's fists, spat on the mother's face and threw a paint tray at the mother in the presence of the children. On prior occasions, [Father] threw objects including a rock and soda can at the mother's head, pushed the mother and spat on the mother in the presence of the children. Such violent conduct of [Father], and failure to protect on the part of the mother, endangers the children's physical health and

6

safety, placing the children at risk of physical harm, damage and danger." The court dismissed or struck the other counts alleged in the petition.[3]

The juvenile court declared the four children dependents of the court, removed them from Mother and their fathers, granted Mother monitored visitation, and ordered reunification services for all parents. Mother's case plan required her (1) to participate in a domestic violence education program and support group for victims, (2) to complete a parenting class, (3) to participate in individual counseling to address domestic violence, protective parenting, and case issues, (4) to prepare a one-page document describing how exposure to domestic violence injures children, (5) to attend three Al-Anon classes, and (6) to submit to on demand, consecutive drug tests if DCFS suspects she is using drugs and, if any test is missed or dirty, to submit to a full drug rehabilitation program with random testing.

At the adjudication/disposition hearing, before the juvenile court made the orders set forth above, Mother's counsel objected to the portion of DCFS's proposed case plan requiring Mother to submit to random or on-demand drug and alcohol testing every other week, and asked the juvenile court for the factual basis for such an order. The court responded: "There's something going on with mother's ability to comply with the case plan and safety plan that have been provided with [*sic*] her. [¶] I don't know that there's drugs and alcohol, but if the social worker, and as part of her visit, encounters mother and has an articulable basis which would be required, then that would be something I want to be able to address so that mother, perhaps this go-round, could get it. [¶] So that's the basis. [¶] But I will make it on suspicion only." Although the proposed case plan required both drug and alcohol testing, the final case plan and disposition order specify

_____

[3] As reflected in the reporter's transcript from the December 18, 2014 adjudication/disposition hearing, the juvenile court made clear it was sustaining only count b-1. The court stated it was "dismiss[ing]" counts b-2 and b-3, and "striking" count a-1. The December 18, 2014 minute order, however, incorrectly states count a-1 was sustained (in addition to count b-1). As stated in the disposition below, we order the juvenile court to correct the December 18, 2014 minute order to reflect that count a-1 was stricken from the petition.

on demand, consecutive drug testing only (and not alcohol testing), on DCFS's suspicion Mother is using drugs. As set forth above, if Mother has a missed or dirty test, she must submit to a full drug rehabilitation program with random testing.

## DISCUSSION

Mother contends the juvenile court erred in requiring her to submit to on demand, consecutive drug tests if DCFS suspects she is using drugs. For the reasons explained below, we agree.

"If a child is adjudged a dependent child of the court on the ground that the child is a person described by Section 300, the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child . . . ." (§ 362, subd. (a).) "The juvenile court may direct any reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out this section . . . . The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." (§ 362, subd. (d).) "The reunification plan '"must be appropriate for each family and be based on the unique facts relating to that family."'" (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.)

A juvenile court may include a testing order in a reunification plan where the court has not sustained an allegation in the dependency petition regarding substance abuse or use, when "testing will facilitate appellant's compliance with the remainder of the reunification plan." (*In re Christopher H.*, *supra*, 50 Cal.App.4th at p. 1008.) "[W]hen the court is aware of other deficiencies that impede the parent's ability to reunify with his child, the court may address them in the reunification plan." (*Ibid.*)

"The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion. [Citations.] We cannot reverse the court's determination in this regard absent a clear abuse of discretion." (*In re Christopher H.*, *supra*, 50 Cal.App.4th at p. 1006.)

There is no evidence in the record indicating Mother *ever* used drugs or alcohol, let alone that drug or alcohol use by Mother impacted her ability to care for the children. Therefore, any testing order for Mother is arbitrary and capricious and a clear abuse of discretion by the juvenile court. Should DCFS discover facts indicating alcohol or drug use by Mother is interfering with her ability to care for the children, DCFS may present those facts to the court and the court may make an appropriate order at that time. As it stands now, the order allows DCFS to demand Mother test on a whim even though there has been no indication from anyone (law enforcement, social workers, family members) that Mother has ever had an issue with alcohol or drug abuse (or that anyone has ever even seen her under the influence). We reverse the portion of the disposition order and case plan regarding drug testing for Mother because the court abused its discretion in making this order.[4]

## DISPOSITION

The portion of the December 18, 2014 disposition order and case plan requiring Mother to submit to drug testing if DCFS suspects she is using drugs is reversed. The juvenile court is directed to correct the December 18, 2014 minute order to reflect count a-1 in the dependency petition was stricken and not sustained. In all other respects the order is affirmed.

NOT TO BE PUBLISHED.

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

JOHNSON, J.

---

[4] Given our conclusion there is no evidentiary support for the order, we need not address Mother's contention the juvenile court may not task DCFS with the discretion to demand a parent drug test.

9